UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Andrelino Cardoso,

        Plaintiff,

v.

The Board of Regents of the University
of Minnesota,

        Defendant.

Civ. No. 16-88 (RHK/LIB)
**MEMORANDUM OPINION AND ORDER**

---

James W. Balmer, Stephanie M. Balmer, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, Minnesota, for Plaintiff.

Dan Herber, Office of the General Counsel, University of Minnesota, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

Plaintiff Andrelino Cardoso previously worked for the University of Minnesota-Duluth ("UMD") as its Director of Dining Services. He commenced this action in January 2016 against the Board of Regents of the University of Minnesota (the "Board"), UMD's governing body, alleging that his employment had been terminated on account of his race, color, national origin, and age, in violation of various federal and state laws. The Board now moves to dismiss Cardoso's Complaint. For the reasons that follow, its Motion will be granted in part and denied in part.

## BACKGROUND

Cardoso is a 48-year-old male "with black skin who is a native of Portugal and a U.S. Citizen." (Compl. ¶ 11.)  UMD hired him on May 14, 2012, as its Director of Dining Services, to oversee all of UMD's dining-services operations. (Id. ¶ 12.)  His tenure was for "12 month terms [] renewable annually." (Id.)  He was the school's first black Director of Dining Services. (Id. ¶ 14.)

According to the Complaint, Cardoso received repeated favorable performance reviews and his employment term was renewed at least once. (See id. ¶¶ 18, 20.)  However, on June 9, 2014, shortly after a positive performance evaluation, he received a letter informing him that "his contract with the University would not be renewed." (Id. ¶ 22.)  He alleges that the non-renewal violated "numerous provisions of the University of Minnesota's Board of Regents Policy regarding Employee Performance Evaluation and Development" (id. ¶ 23), although he does not specify how or why that (allegedly) was the case.  He further alleges that several months after his termination, UMD's Vice Chancellor for Student Life and Dean of Students, Lisa Erwin, "issued a letter indicating that the reason for the . . . non-renewal of [his] contract was based on 'multiple performance concerns . . . which had been previously communicated'" to him. (Id. ¶ 24.)  According to Cardoso, however, he had never received negative feedback from Erwin or anyone else at UMD, and Erwin's criticisms of his "management style" were "couched in discriminatory stereotypes and unsupported by any real or credible evidence." (Id. ¶¶ 25-33.)  He asserts that the performance reasons laid out in Erwin's letter "were false and constitute pretext with the intended effect of hiding the University's actual discriminatory

animus behind [its] refusal to renew [his] contract because of his race, color, national origin, and/or age." (Id. ¶ 34.)

In March 2015, Cardoso filed a charge of discrimination with the Minnesota Department of Human Rights, which was cross-filed with the Equal Employment Opportunity Commission. The Department of Human rights, having found no probable cause to believe discrimination had occurred, issued a right-to-sue letter. (Id. ¶ 8.) Cardoso then commenced the instant action, alleging UMD had discriminated against him based on (i) his race, color, and/or national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.*, and (ii) his age, in violation of the MHRA and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The Board now moves to dismiss his claims. Its Motion has been fully briefed, the Court heard argument on August 25, 2016, and the Motion is ripe for disposition.[1]

### STANDARD OF DECISION

A complaint will survive a motion to dismiss only if it includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). A "formulaic recitation of the elements of a cause of action"

---

[1] Cardoso initially responded to the Board's Motion by (among other things) requesting leave to amend his Complaint. (See Doc. No. 13.) The Court opted to hold in abeyance the Motion to Dismiss pending a decision on amendment. By Order dated July 5, 2016, Magistrate Judge Brisbois denied Cardoso leave to amend (save for striking one paragraph of the Complaint), and Cardoso did not appeal that Order. The undersigned then afforded him another opportunity to respond to the Board's Motion, and he filed a new opposition on August 4, 2016 (Doc. No. 26).

will not suffice.  Id. at 555; accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Nor will a complaint suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557).  Instead, the plaintiff must set forth sufficient facts in his complaint to "nudge[] the[] claim[] across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  In reviewing a motion to dismiss, the Court "must accept a plaintiff's specific factual allegations as true but [need] not . . . accept . . . legal conclusions."  Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556).

## ANALYSIS

**I.    The MHRA claim**

The Board first argues that Cardoso's MHRA claim (Count 1 of the Complaint) fails because it is barred under the Eleventh Amendment to the United States Constitution and untimely.  The Court agrees.[2]

*Eleventh Amendment.*  The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  Simply stated, it immunizes states from

---

[2] At the hearing on the Board's Motion, Cardoso's counsel acknowledged he was unable to find any case law to counter the Board's arguments, effectively conceding dismissal of the MHRA claim.

claims filed against them in federal court without their consent.³ The University of Minnesota, of which UMD is a constituent part (see Compl. ¶ 8), is considered an arm of the state and, therefore, shares the State of Minnesota's Eleventh Amendment immunity. E.g., Treleven v. Univ. of Minn., 73 F.3d 816, 818 (8th Cir. 1996); Teachout v. Univ. of Minn., Civ. No. 09-2140, 2011 WL 916356, at *5 (D. Minn. Mar. 16, 2011) (Frank, J.). Hence, Cardoso's MHRA claim is barred unless either Congress or the Minnesota legislature has abrogated immunity over the claim. See, e.g., Phillips v. Minn. State Univ. Mankato, Civ. No. 09-1659, 2009 WL 5103233, at *2 (D. Minn. Dec. 17, 2009) (Doty, J.) (Eleventh Amendment immunity "prohibits an individual from suing a state . . . unless the state consents to suit or Congress abrogates state immunity") (citations omitted). And it is quite clear no such abrogation has occurred. See, e.g., Cooper v. St. Cloud State Univ., 226 F.3d 964, 969 (8th Cir. 2000) (affirming dismissal of MHRA claims on Eleventh Amendment grounds); Phillips, 2009 WL 5103233, at *3 ("Minnesota is immune from MHRA claims in federal court.").⁴

---

³ Although on its face the Eleventh Amendment applies only to actions brought by citizens of other states, the Supreme Court has interpreted it to bar actions in federal court by a state's *own* citizens. See Hans v. Louisiana, 134 U.S. 1, 15 (1890); Treleven v. Univ. of Minn., 73 F.3d 816, 818 (8th Cir. 1996). Regardless, the Complaint here alleges that Cardoso is a Nebraska citizen. (Compl. ¶ 2.)

⁴ The named Defendant is the Board of Regents and not the University of Minnesota (or UMD), but this is a distinction without a difference. See Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 547-48 (2002) (Eleventh Amendment immunity applied to state-law claims against Board of Regents). To be sure, there are limited exceptions for claims against state officials in their official capacities, when sued for prospective injunctive relief, see, e.g., Treleven, 73 F.3d at 819 ("Actions in federal court seeking injunctive relief against state officials . . . are not always barred by the Eleventh Amendment."), and for claims against state officials in their individual capacities for acts "outside their official duties," Okruhlik v. University of Arkansas *ex rel.*

Quoting Okruhlik v. University of Arkansas *ex rel.* May, 255 F.3d 615, 627 (8th Cir. 2001), Cardoso argues that Congress has "validly abrogated the Eleventh Amendment for claims of disparate treatment and impact on the basis of . . . race." (Mem. in Opp'n at 1.) Of course, Cardoso has alleged much more than *race* discrimination here. Regardless, Okruhlik said nothing about abrogating immunity for *MHRA* claims. Rather, that case concerned whether Congress, in enacting Title VII, had abrogated the states' Eleventh Amendment immunity for claims under *that* statute. Okruhlik simply does nothing to save Cardoso's MHRA claim. See also Cooper, 226 F.3d at 966-69 (considering Title VII claim against state university but affirming dismissal of MHRA claim on Eleventh Amendment grounds).

*Timeliness*. The MHRA claim also is untimely. An action asserting such a claim must be commenced "within 45 days after receipt" of a right-to-sue letter. Minn. Stat. § 363A.33, subd. 1(1). Receipt is presumed to have occurred "five days from the date of service" of the letter. Id., subd. 1. Here, Cardoso alleges he was issued a right-to-sue letter on December 1, 2015 (Compl. ¶ 8), meaning his 45-day period expired in mid-January 2016. And although he commenced the instant action on January 14, 2016, he did not complete *service of process* until March 15, 2016 (see Doc. No. 6), and it is the service date that controls. See, e.g., Johnson v. Carroll, 658 F.3d 819, 828-29 (8th Cir. 2011) (noting that Minnesota law requires *service* in order to commence an action, and hence Minnesota law, not Federal Rule of Civil Procedure 3, applies when determining

---

May, 255 F.3d 615, 626 (8th Cir. 2001). Here, however, Cardoso has sued the Board, not its individual members, and he does not seek injunctive relief.

whether a statute of limitations has expired); Anderson v. Unisys Corp., 47 F.3d 302, 309 (8th Cir. 1995) (same).[5]

## II. The federal claims

The Board next argues that Cardoso's Title VII and ADEA claims must be dismissed because they have been inadequately pleaded under Twombly and Iqbal. It argues that although the Complaint alleges Cardoso is a member of several protected classes under these statutes and that he was terminated from his job, he has not alleged "any statement or conduct that could in any way be used to infer a discriminatory attitude" by UMD. (Def. Mem. at 8.) And in the absence of such allegations, the Board contends Cardoso has failed to show a "link between his allegedly unfair treatment and his membership in [] protected . . . class[es]," thus defeating his claims. (Id. at 15.)

To be sure, there is appeal to the Board's argument. The Eighth Circuit has recognized that although a plaintiff need not plead facts establishing every element of a *prima facie* case of discrimination,[6] those elements "are part of the background against which a plausibility determination should be made." Blomker v. Jewell, __ F.3d __, 2016 WL 4157594, at *3 (8th Cir. Aug. 5, 2016) (citation omitted). And while Cardoso

---

[5] In his brief, Cardoso argues his MHRA claim "closely mirror[s] his related federal claims which [the Board] does not claim were untimely," and hence dismissing the claim would be "unreasonable and contrary to public policy." (Mem. in Opp'n at 2.) But he cites no authority for this proposition, which is contrary to the law in this Circuit. See Anderson, 47 F.3d at 306-09 (permitting ADEA claim to proceed but dismissing parallel MHRA claim as untimely). And as noted above, his counsel acknowledged at oral argument that his MHRA claim could not stand.

[6] The elements of a *prima facie* case, under Title VII and the ADEA, are that the plaintiff (1) was a member of a protect group, (2) was qualified to perform his job, and (3) suffered an adverse employment action, and then (4) the circumstances permit an inference of discrimination. E.g., Blackwell v. Alliant Techsystems, Inc., 822 F.3d 431, 435 (8th Cir. 2016).

has pleaded facts addressing the first three elements of a *prima facie* case, his Complaint does little to address the fourth element – that is, facts connecting his protected status(es) to the termination of his employment. This is the most critical element, for the "touchstone of a claim of disparate treatment under the ADEA, as it is under . . . other employment-discrimination statutes, is intentional discrimination against the plaintiff." Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995).

But contrary to the Board's argument, the Complaint is not completely devoid of allegations "which, if true, would make th[e] link" between Cardoso's "allegedly unfair treatment and membership in a protected class." (Reply Mem. at 6.) For example, Cardoso alleges that he repeatedly received positive performance reviews. (Compl. ¶¶ 18, 20.) A strong employment history is one factor courts consider in determining whether an employer has engaged in discrimination. See, e.g., Guimaraes v. SuperValu, Inc., 674 F.3d 962, 975 (8th Cir. 2012); Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1020 (8th Cir. 2005). So, too, is a positive review shortly before termination, as alleged here. See, e.g., Smith v. Allen Health Sys., Inc., 302 F.3d 827, 834 (8th Cir. 2002) ("[R]ecent favorable reviews are often used as evidence that the employer's proffered explanation for the adverse action had no basis in fact or was not actually important to the employer."). Furthermore, Cardoso has alleged that he was never advised of any performance concerns before he was fired, suggesting the reasons laid out in Erwin's letter may have been false and pretextual. See, e.g., Gibson v. Geithner, 776 F.3d 536, 541 (8th Cir. 2015). And, the Complaint also alleges that UMD violated its own policies when it terminated Cardoso's employment. (Compl. ¶ 23.) This, too, can

suggest discrimination. See, e.g., Blackwell v. Alliant Techsystems, Inc., 822 F.3d 431, 435 (8th Cir. 2016).

To be sure, the allegations in this case are thin. But in light of the low pleading bar set by Federal Rule of Civil Procedure 8, the Court concludes that Cardoso has alleged just enough to state plausible claims for relief under Title VII and the ADEA. See also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514-15 (2002) ("Respondent argues that allowing lawsuits based on conclusory allegations of discrimination to go forward will burden the courts and encourage disgruntled employees to bring unsubstantiated suits. Whatever the practical merits of this argument, the Federal Rules do not contain a heightened pleading standard for employment discrimination suits. A requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.") (internal quotation marks and citation omitted).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that the Board's Motion to Dismiss (Doc. No. 8) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** with respect to the MHRA claim (Count 1 of the Complaint), and that claim is **DISMISSED WITH PREJUDICE**. In all other respects, the Motion is **DENIED**.

Date: September 8, 2016　　　　　　　　　　s/Richard H. Kyle　　　　　　
　　　　　　　　　　　　　　　　　　　　RICHARD H. KYLE
　　　　　　　　　　　　　　　　　　　　United States District Judge