UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Andrelino Cardoso,

      Plaintiff,

v.                                                 16-cv-88 (JNE/LIB)
                                                  ORDER

The Board of Regents of the
University of Minnesota,

      Defendant.

Defendant Board of Regents of the University of Minnesota ("the University") moves for summary judgment. Plaintiff Andrelino Cardoso opposes summary judgment. For the reasons set forth below, the Court grants the University's motion.

## BACKGROUND

Cardoso is "an African-American of Portuguese origin." Pl. Br. 8, ECF No. 58. On May 14, 2012, the University hired Cardoso as Director of Dining Services at the University of Minnesota Duluth ("UMD") campus. On June 9, 2014, the University notified Cardoso that it decided against renewing his employment contract. Cardoso commenced this suit claiming that the University's failure to renew his contract constituted (1) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and (2) race, color, and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964. Amend Compl., ECF No. 28. Cardoso has since abandoned his ADEA claim. Pl. Br. 1.

The University insists that it declined to renew Cardoso's contract for three main reasons. First, Cardoso had a "strained relationship with Dining Services union employees." Def. Br. 5, ECF No. 49. Second, Cardoso failed "to follow his superior's directives." *Id.* at 4. Third, Cardoso had "substandard communication and management skills." *Id.* at 12; Smyth Decl. Ex. C, ECF No. 52.

  1. <u>Cardoso's relationship with the Teamsters.</u>

In the five years immediately preceding Cardoso's tenure as Director of Dining Services, the Minnesota Teamsters Public and Law Enforcement Employees Union 320 ("the Teamsters") filed only one grievance on behalf of a Dining Services employee. Rossi Decl. ¶ 4, ECF No. 53. During Cardoso's roughly two-year tenure, UMD received seven grievances from the Teamsters on behalf of Dining Services employees. Cardoso Dep. 46:8-56:17, ECF No. 50-3.

The University had warned Cardoso that certain actions he intended to take concerning union employees were likely to elicit grievances asserting violations of the Collective Bargaining Agreement ("CBA") between the University and the Teamsters. Rossi Decl. ¶¶ 9, 10, 12, 14, 15, 16, 19; *Id.* Ex. A. These warnings proved correct. Most of the seven grievances relate to Cardoso's alleged breach of the CBA. *Id.* The University eventually agreed to monetary settlements for these grievances. *Id.* ¶ 20.

Cardoso knew that the University viewed his troubled relationship with the Teamsters as a shortcoming. Cardoso Dep. 25:12-28:18; 31:6-34:23; 37:1-39:22. His six month review and his two annual reviews all list this shortcoming. Herber Decl. Exs. E, F, G, ECF No. 50.

    2.    <u>Cardoso's failure to follow directives.</u>

In early 2014, Cardoso met with his immediate supervisor, Dr. Corbin Smyth, to discuss the possibility of changing UMD's method of purchasing goods for Dining Services. Cardoso Dep. 59; Smyth Dep. 8, ECF No. 50-8. At the time, UMD used a competitive bid process to purchase goods. Engelmeier Decl. ¶ 5, ECF No. 51. Cardoso hoped to instead adopt a primary vendor system. *Id.* ¶ 9.

Purchasing systems impact two of the University's strategic goals: sustainability and positive community involvement. Smyth Decl. Ex. C, ECF No. 52; Erwin Dep. 14:5-16:4, ECF No. 50-4. As a result, Smyth instructed Cardoso to form a committee to analyze the merits of each system of purchasing goods. Smyth Dep. 8:21-9:3; Erwin Dep. 14:5-16:4.

After this, Cardoso asked Claudia Engelmeier, who was then the head of Purchasing for Dining Services at UMD, to explore the process of moving to a primary vendor system. Engelmeier Decl. ¶ 8; *Id.* Ex. B. Cardoso later met one-on-one with the staff of the Dining Services Warehouse. Engelmeier Decl. ¶ 9. At these meetings, he told staff that UMD Dining Services was moving to a primary vendor system. *Id.* Cardoso then emailed staff to request that they maintain the confidentiality of the information he shared regarding the primary vendor system. *Id.* Exs. C, D. He also requested that they ask only him questions about the primary vendor system. *Id.*

In June of 2014, Cardoso asked for Engelmeier's input on an email that he intended to send to the "Primary Vendor Committee." *Id.* ¶ 10; *Id.* Ex. E. The email stated that the committee's "charge is to do the necessary work that will culminate in the

3

UMD issuing a Request for Proposal (RFP) for a Primary Vendor for its products." *Id.* At this point, Engelmeier "became alarmed that this change in the purchasing process was happening in secret." *Id.* ¶ 11. She informed Smyth of the developments. *Id.*

Smyth asked Cardoso if he had informed staff that UMD was adopting a primary vendor system and if he had asked staff to maintain the secrecy of this change. Smyth Dep. 16:3-18:18, 21:5-22:18. Cardoso denied both actions. *Id. See also* Engelmeier Decl. ¶ 9; *Id.* Exs. C, D, E (providing copies of emails).

After further investigation, Smyth concluded that Cardoso had defied Smyth's directive to simply investigate the merits of a primary vendor system by, instead, unilaterally deciding to adopt a primary vendor system and informing staff of that decision. Smyth Dep. 9:3-11:16, 16:3-18:18, 21:5-22:18. He also concluded that Cardoso had asked Dining Services staff to keep secrets. *Id.* What is more, based on these findings, Smyth concluded that Cardoso was being untruthful in his denials of the foregoing actions. *Id.*

As a result, Smyth emailed the Dining Services management team to notify them that UMD had not decided to adopt a primary vendor system. Engelmeier Decl. ¶ 11; *Id.* Ex. F. Smyth also explained that he was taking charge of the committee, that he would appoint its members, and that Engelmeier would lead the committee's deliberations. *Id.* Moreover, he clarified that the committee's objectives were to review the process for purchasing, consider alternative methods of purchasing, and make recommendations for future changes, if needed. *Id.*

4

3. <u>Cardoso's communication and management skills.</u>

Although Cardoso's performance reviews included positive feedback, each review advised Cardoso that he should improve his communication and management skills. *See* Herber Decl. Exs. E, F, G. Consistent with the results of these reviews, Gregory Sather, UMD's Budget Director, testified that Cardoso "didn't take suggestions well." Sather Dep. 21:2-10, ECF No. 50-9. Sather also testified that he spoke with multiple Dining Services employees who expressed high levels of dissatisfaction with Cardoso's management. *Id.* at 22:2-24:4.

Similarly, Elizabeth Abrahamson, Associate Director of Dining Services, testified that the "staff was so unhappy" under Cardoso and many were confused by Cardoso's decisions. Abrahamson Dep. 26:11-22, ECF No. 50-10. In the end, the University concluded that "Cardoso's communication style with Dining Services employees created confusion, belittlement, and even some feelings of intimidation among the employees." Smyth Decl. Ex. C (providing as an example Cardoso's above-discussed command to employees to maintain the secrecy of discussions about the primary vendor system).

## STANDARD OF REVIEW

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if its resolution will affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court will grant summary judgment when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). That said, in making these determinations, the Court must draw all reasonable inferences from the evidence in favor of the nonmoving party. *Anderson*, 477 U.S at 255.

## DISCUSSION

Cardoso "may survive summary judgment either by direct evidence, or by creating an inference of discrimination under the *McDonnell Douglas* burden-shifting framework." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). Cardoso offers no direct evidence. As a result, the Court uses the *McDonnell Douglas* framework.

"Under *McDonnell Douglas*, the plaintiff initially has the burden to establish a prima facie case of discrimination." *Lake*, 596 F.3d at 873. "To establish a prima facie case, [Cardoso] 'must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination.'" *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012) (citation omitted). Satisfaction of these elements "creates a rebuttable presumption of discrimination," which shifts the burden "to the defendant to provide a legitimate, nondiscriminatory reason" for its

6

employment decision. *Lake*, 596 F.3d at 873. "'If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was pretext' for discrimination." *Id.* at 873-74 (citation omitted).

Nevertheless, when "an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext." *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007). The University articulated three legitimate, nondiscriminatory reasons for the nonrenewal of Cardoso's contract. Accordingly, the Court proceeds directly to the issue of pretext.

First, as stated above, the University chose nonrenewal because Cardoso worsened the University's relationship with the Teamsters. Cardoso does not dispute that his actions provoked union grievances that resulted in monetary settlements. Nor does he provide any evidence that this reason was pretextual.

Second, the University chose nonrenewal because of the purchasing system episode. Cardoso ignored a supervisor's directive and secretly pursued a revolutionary purchasing system that risked hindering UMD's strategic goals of sustainability and community involvement. He asked his staff to maintain the secrecy of his actions and denied these actions when Smyth, his supervisor, confronted him.

Cardoso argues that Smyth conducted "an incomplete investigation" of the purchasing system episode. Pl. Br. 10. Cardoso declares that he was actually following Smyth's directive as to the purchasing system examination and that Smyth had "full knowledge that Mr. Cardoso was following Smyth's directions and had not exceeded

7

those instructions in any way." *Id.* at 10-11.  For that reason, Cardoso seems to maintain that the purchasing system episode was not the true reason for his nonrenewal.  *Id.*  He concludes that, if the purchasing system episode was pretextual, "the only possible inference is that the decision was based on [his] skin color or national origin.  There is no other explanation."  *Id.* at 11.

But Cardoso cites no evidence to support his factual theory.  He offers "[m]ere allegations, unsupported by specific facts or evidence beyond . . . [his] own conclusions." *Thomas*, 483 F.3d at 527.  In contrast, the University offers testimony, affidavits, and documentary evidence to prove that (1) Smyth correctly believed Cardoso disregarded Smyth's directive as to the purchasing system examination, (2) Smyth correctly believed that Cardoso attempted this insubordination in secret, and (3) Smyth correctly believed that Cardoso attempted to mislead him by denying the foregoing actions.  As a result, there is no genuine dispute concerning the University's account of the purchasing system episode.  By extension, Cardoso fails to show that nonrenewal on the basis of the purchasing system episode was pretextual.

Third, the University chose nonrenewal because it found that Cardoso had substandard management and communication skills.  Cardoso does not dispute this characterization of his skills and he provides no evidence that this reason was pretextual.[1]

In short, Cardoso provides no evidence to create a genuine dispute about whether any of "'the proffered reason[s were] pretext' for discrimination."  *Lake*, 596 F.3d at 873-

---

[1] Cardoso claims that the testimonies of those who decided on nonrenewal "do not support" either this reason or the reason relating to Cardoso's relationship with the Teamsters.  Pl. Br. 7.  But Cardoso offers no additional argument and cites no evidence that supports his claim.  Further, the Court finds nothing to support Cardoso's claim in the testimonies of those who decided on nonrenewal.

74 (citation omitted). Thus, the three reasons for nonrenewal were not pretextual and Cardoso cannot prevail under the *McDonnell Douglas* framework.[2] Summary judgment is appropriate.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant Board of Regents of the University of Minnesota's motion for summary judgment [ECF No. 48] is GRANTED.

2. This action [ECF No. 28] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 5, 2018

                                                       s/ Joan N. Ericksen
                                                      JOAN N. ERICKSEN
                                                      United States District Judge

---

[2] Cardoso also raises an argument regarding the identity of the decision-maker. He insists that Smyth decided against renewal, while Dr. Lisa Erwin, the Vice Chancellor for Student Life and Dean of Students, decided to hire him. Pl. Br. 4-5, 10. For its part, the University insists that Erwin decided to hire Cardoso and also decided against renewal. Although it is unclear from the briefing, it seems that Cardoso may not have raised this argument to prove pretext or discrimination. Instead, it appears that Cardoso may be attempting to avoid the strong inference of non-discrimination that exists if Erwin both decided to hire Cardoso and to not renew Cardoso's contract. *See Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362-63 (8th Cir. 1997) ("There is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time."). Regardless, the resolution of this dispute as to the decision-maker has no impact on the outcome of this case. Smyth's alleged status as the decision-maker is not evidence that the University's legitimate reasons for nonrenewal were pretextual  The dispute, therefore, is not material and the Court declines to address it.